CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 19 2009

JOHN F. CORCORAN, CLERK
BY:
　　DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| EARL BOXLEY, | ) |
| Plaintiff, | ) Case No. 7:09CV00078 |
| v. | ) |
| | ) MEMORANDUM OPINION |
| D. A. BRAXTON, WARDEN, ET AL., | ) |
| | ) By: Glen E. Conrad |
| Defendants. | ) United States District Judge |

Plaintiff Earl Boxley, a Virginia inmate proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983, with jurisdiction vested pursuant to 28 U.S.C. § 1343. In his complaint, Boxley alleges that officials at Augusta Correctional Center, a Level 3 & 4 security institution, are forcing him as a Level 1 security inmate to stay in the segregation unit in order to be safe from threats of harm from other inmates in the general population. Upon consideration of the complaint, the court finds that this action should be dismissed pursuant to 42 U.S.C. § 1997e(a), because it is clear from the face of Boxley's submissions that he did not exhaust administrative remedies before filing this lawsuit.

## Background

Boxley's submissions indicate the following sequence of events on which his complaint is based. He was housed at Cold Springs Correctional Unit, a Level 1 (or low) security facility, in December 2008, when he was charged with using vulgar and insolent language toward a prison employee while working with a road crew. It was Boxley's first disciplinary charge. He pleaded guilty and accepted a penalty offer of fifteen days in isolation and review of his custody status.[1] Shortly thereafter, authorities transferred Boxley from Cold Springs to Augusta Correctional Center, a more secure facility for inmates with security classifications of 3 or 4.

---

[1] According to Boxley, he was told that if he accepted the penalty offer, he would be out of isolation in time for Christmas.

After nine days in segregation at Augusta, Boxley was moved to general population. Another inmate told Boxley to watch his back because he had heard some inmate saying that "they was goin[g] to beat [Boxley] down." Boxley took this warning as a joke, but two days later, another inmate asked if he had "speed" because he would "need it [be]cause them D.C. dudes are waiting for the right time to get at you." Boxley went to the ranking officers in his housing area and told them about the threats. They told him that he would have to take a disciplinary charge in order to be kept in segregation, so he did. Once in segregation, he was told that he would have to return to the general population unless he took another disciplinary charge and lost good conduct time. Boxley chose instead to return to general population.

On February 16, 2009, he was walking to the canteen when two inmates walked up to him and said they were going to "beat [his] ass." He told an officer in the commissary that the two inmates had given him trouble, and was told to talk to the building sergeant. When his name was called for commissary, he pretended that he had forgotten something and ran back to his building to talk to the building officer about the threats. He later picked out the pictures of the two inmates who had threatened him. This information went to the lieutenant, who said that Boxley as a Level 1 inmate should not be at a Level 3-4 institution. For his own safety, Boxley remains in segregation, while the inmates who threatened to harm him are in general population. Boxley sues the prison and Warden Braxton for $50,000.

## Discussion

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). It is well established that the exhaustion requirement is mandatory, <u>Anderson v. XYZ Correctional Health Services, Inc.</u>, 407 F.3d 674, 677 (4th Cir. 2005), and that the requirement "applies to all inmate suits about prison life." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). Failure to use all the steps in the agency's grievance procedure

so as to allow the agency to address an issue on its merits is not "proper exhaustion" and will bar actions filed by inmates under § 1983. Woodford v. Ngo, 548 U.S. 81, 90 (2006). While failure to exhaust as required under § 1997e(a) is an affirmative defense, the court may raise the issue of exhaustion on its own motion and "in the rare case where failure to exhaust is apparent from the face of the complaint," may summarily dismiss a complaint on that ground. Anderson, 407 F.3d at 682.

As part of his complaint, Boxley submits copies of several grievances, informal complaint forms, emergency grievances, and other documentation. One of his submissions is a letter, dated January 28, 2009, from the Virginia Department of Corrections (VDOC) Offender Management Services (OMS) in Richmond, addressed to Boxley in response to his written inquiry to the OMS office about his security level and housing classification. The letter reads, in pertinent part:

> Please be advised that it is the responsibility of the Institutional Rehabilitation Counselor to determine if you are eligible and/or suitable for program participation [such as institutional transfers or enemy claims]. In addition, the counselor is responsible for initiating changes in security level and class level assignments. Upon receipt of recommendation from the rehabilitation counselor, Central Classification Services will process the request.
> Questions and/or concerns regarding security level reviews and class level recommendations are to be addressed to your [counselor]. . . .
> In accordance with Division Operating Procedure 866, an inmate may appeal the decision of the ICA and/or CCS by filing an inmate grievance within 30 days of receipt of decision.

(Compl., unnumbered exhibit).

Boxley's submissions clearly reflect that he has not yet complied with the VDOC procedure for seeking documentation of enemies or need for a transfer. His exhibits indicate that he has filed numerous requests for a transfer and complaints that he has enemies among the general population.[2] However, none of these requests comports with the procedure described to him in the January 28, 2009 letter, which requires him to address his concerns about enemies and transfers to his counselor

---

[2] Boxley's complaint and grievances also allege that other inmates have threatened to harm him if he remains in the general population. However, it is clear from his submissions that when he told officers of these threats, he was assigned to the segregation unit, isolated from the inmates who have threatened him. Accordingly, he fails to state a claim that officials have acted with deliberate indifference to known risks of harm so as to state any Eighth Amendment violations related to the threats. Farmer v. Brennan, 511 U.S. 825, 837 (1994) (finding that failure to protect claim requires showing that "a prison official acted or failed to act despite his knowledge" of "an excessive risk to inmate health or safety").

- 3 -

and authorizes the counselor to initiate requests on these matters to the decision-making body, the CCS. Once this entity issues a decision as to whether Boxley has sufficiently documented enemy problems or is suitable for a transfer to a lower security prison once again, Boxley can then "appeal" an adverse decision through the grievance procedure. Until the counselor has relayed a request to the CCS, however, Boxley's grievances seeking a transfer or enemy documentation are premature.[3]

## Conclusion

As the court finds it clear from the face of his submissions that plaintiff did not exhaust the proper administrative procedures available to him before filing this lawsuit, his complaint must be dismissed without prejudice, pursuant to 42 U.S.C. § 1997e(a). An appropriate order shall be issued this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 19th day of March, 2009.

*[signature]*
United States District Judge

---

[3] In any event, Boxley has no constitutional right to be housed in a lower security prison. Meachum v. Fano, 427 U.S. 215, 223-224 (1976) (finding that inmates had no liberty interest in avoiding transfer from medium to maximum security prison or in being transferred only after proven, serious misconduct). He also has no constitutional right to be housed in the general population instead of administrative segregation under the conditions that he has alleged. Beverati v. Smith, 120 F .3d 500, 502 (4th Cir.1997) (confinement in administrative segregation does not exceed the sentence imposed in such an extreme way as to give rise to the protection of the Due Process Clause by its own force, and inmates did not possess a liberty interest in avoiding administrative segregation).

- 4 -